This appeal stems from the non-investigatory, suspicionless detention of Mr. Tyler for the limited purpose of executing a pre-existing arrest warrant on Ms. Gonzalez, a woman who was sitting in his parked vehicle. And Mr. Tyler's detention became unreasonable once the officers achieved that limited purpose. They removed Ms. Gonzalez from his vehicle, handcuffed her, and brought her to a different gas station to help curb. At that point, any inherent danger and logistical hurdles associated with Ms. Gonzalez's arrest meaningfully dispelled. Mr. Chaffee, I apologize for interrupting so quick, but is that really the issue? Because the detention of Mr. Tyler, the handcuffing, the separation of him from the vehicle, really has no nexus to the discovery of the contraband in the vehicle. Isn't the real issue whether or not the protective suite was unlawful in the sense that not that they detained him, but that they didn't let him get it back in the car and drive away? Would you agree that that's really the issue? I think the issue is continuing to prevent him from leaving the scene before, and it wasn't a protective suite that the government justified. Whatever you call it. In this case, it was that the dog, they got a dog to the scene before they let him. Well, yeah, they were able to get the canine because they didn't let him get in the vehicle until the female officer came.  And just, it is his vehicle, he has the possessory interest. By preventing him from leaving the scene, he goes along with the vehicle. There wasn't another basis to keep the vehicle at the scene separate and apart from Mr. Tyler. So the continuation of detention is really the core illegality here that we're focused on. That's correct. And I think the forceful measures used during that detention are informative in the totality of the circumstances test we're talking about here, but really the crux of the argument is that he should have been free to leave the scene before the canine handler arrives. I agree with that. Why doesn't our denizen decision sound a death knell for your argument? I mean, both cases involve the rest of passengers late at night in a high crime area, shared purpose arguably that is being asserted as it relates to the fact that there's proximity between them and the vehicle. The imprints that he knew that she was engaged in narcotics trafficking, which often is associated with firearms and violence. I mean, denizen arguably maps right onto this case. And so why doesn't denizen sink you? I disagree for two important reasons. There are two objective, reasonable suspicion bars that the government met in denizen that it has not tried to meet here. And I think I understand them to have conceded they do not meet here. One is that there was an independent lawful basis for the detention in denizen specifically that both Mr. Denizen and his passenger were actively engaged in criminal activity. It's 3 a.m. in a parking lot and they think they're about to steal a car. The second one is that Mr. Denizen himself can't be, there can't be a pat down search or a protective sweep until the government has met the objective bar that we have for those contexts, which is reasonable suspicion that he himself was armed and dangerous. So neither of those two objective, reasonable suspicion bars are at issue in this case, which makes it important that this court really narrowly circumscribe what the government is permitted to do. And I also just want to note a little bit more about denizen. There the court accepted the idea, which the government hasn't argued here, that Mr. Allen, the passenger was definitely armed and dangerous. He had weapons specific arrest warrants and the court still said, we don't just automatically impute that danger to Mr. Denizen. We do an individualized analysis to see if he himself meets the standard of armed and  And one factor in that analysis is that he's with Mr. Allen who has arrest warrants, but that's not a standalone. Oh, I get that. Now, I'm sorry. You go ahead. I apologize, Your Honor. No, you go ahead. Oh, I was just going to say, here, we don't have the individual hook that there was. There was Mr. Denizen where he is suspected of criminal activity, and so we're much more in the realm of Ibarra and impermissible suspicion by association. Remind me, was the woman being arrested in the front seat, passenger in the front seat? Yes, she was. So he is sort of in and out of the vehicle, just completing pumping gas, I believe is the testimony, and she is sitting in the parked vehicle in the passenger seat. But at the time where we're challenging the detention, it's when she's been taken out of the vehicle and she's on a different gas pump curve. In order to determine whether or not these distinguishing facts in Denizen would render Denizen inapplicable to our case, don't we have to view the evidence in light most favorable to the ruling? Factual findings, yes, and we haven't challenged any factual findings in this case. Well, I don't want to be hyper-technical, but we view the evidence in the light most favorable to the ruling, do we not? Yes, I think that rule, I understand that rule to be meaningful when there is some question of what was actually going on in the underlying case. We're not challenging that she's not- Well, inferences. In other words, and I didn't mean to talk over you, but just to tell you, Ms. Jaffee, what my question is, when we view the evidence in the light most favorable to the ruling, maybe there are some distinguishing facts, but to follow up on the Chief's question, we have exactly the same question, Denizen driving, as Mr. Tyler was, Ms. Gonzalez was the equivalent of the passenger in Denizen. We have our court saying that one of the considerations is that they are driving together and that there can be a reasonable inference of a common enterprise, and that in Denizen, Denizen's concern might be to access weapons in order to prevent his cohort, the passenger in Denizen, from being arrested in order to protect himself, and we have that same viewing the evidence favorably to the ruling here with Mr. Tyler, his concern that at that point, with so little information known to the officers, that Mr. Tyler might well want to, if he has weapons in the vehicle and nobody knows, in order to prevent Ms. Gonzalez from being taken away out of self-interest, or his friendship with Ms. Gonzalez. So I do want to be clear that the determination of reasonableness is one for this court, and that is something that this court repeatedly does de novo, not deferring to the district. But we do that based on the evidence. Correct, and then I also think it's important here, you were talking about little evidence of what may or may not be in the car, this court has been careful to say that the lack of evidence and the possibility that there could be danger is not enough to justify a serious intrusion, most of the time. So I think a good example of that is United States v. Bagley in the reply brief, where the court recognized, you know, sometimes there might be the possibility that there's dangerous people in the broader context of a home, but if you don't meet an objective suspicion bar, you can't act on that possibility. There's always a tension between the officer's safety concerns and liberty interests, and we're balancing them under the reasonableness test. I think Denison is really different here because the government withheld to two different objective suspicion bars, and there was more individualized, any individualized information about Mr. Denison in that stop, because he himself is out in a parking lot at 3 a.m. accused of, or reasonably suspected to be actively engaging in criminal activity, which is a very different factual circumstance than we have here. And I think even in Denison, this court recognized, distinguished the facts of Denison from a case like Ibarra, and recognized that something like just suspicion by association based on the person you're accompanying would not be enough, and there's a reason that would not be enough. It's rife for abuse. It doesn't allow, what we typically require is some sort of quantum of individualized suspicion against a particular individual before we take a serious intrusion. Even if there's no view, and I think at least my recollection is you're correct on that, there's no view that Mr. Tyler was engaged in criminal activity, at least if you focus on the common enterprise, if the common enterprise is drug trafficking, our cases are legion that tools of the trade include weapons. And so the question is, if he's trying, even if he's only trying to protect his own dope, you know, why would you not believe that he would do what he needed to do as an officer, because they knew, at least they knew that Ms. Gonzalez was involved in the drug trade. I mean, that's what prompted them to be there to begin with. And so why would that not give rise to an inference, in the car with drug dealer, we know guns are tools of the trade or the drug trafficking, and so why don't we make the reasonable inference that this guy is dangerous to us? A couple of points. First, I want to be clear that the government also conceded that they did not have reasonable suspicion that Ms. Gonzalez was actively engaging in criminal activity. The sole basis for detaining anyone in this stop is that she has a warrant for failure to appear, yes, in a drug trafficking case. At some time in the past, we don't have information about when the allegations in that case were. And let me be clear on that. I thought that's why they were staking her out to begin with, that they thought she was involved in drug trafficking. The government has abandoned any argument that they had a reasonable belief that she was currently engaged. I think that's because this investigation stemmed out of an anonymous tip that was shredded, was not put in the police reports, and was stale and a week old. So the government didn't rely on that as their basis for a stop. I understand that that motivates why they're in the area, but it is not the basis for detaining her in this moment. So we're talking about past allegations of drug trafficking. I don't believe that that answers in the record, Your Honor. I don't think we know when the allegations underlie- You don't know when the arrest warrant was? Correct. I don't have that information. But I think the point being that even if it were weeks, that it is not what they're currently suspecting is going on in that moment. Even if it were weeks, that doesn't change the fact, they don't have to blind themselves to the fact that she at least is alleged to be a drug dealer. I mean, why-  If she was just alleged to be a drug dealer and they pulled, say it's just Ms. Gonzalez, and they pull her over for a traffic violation, the fact that she has a criminal history is never going to be enough to do something like search her vehicle under a protective suite. This court always requires- Well, that's not what we're talking about. We're talking about the fact that she's alleged to be a drug dealer, she has an outstanding warrant, they arrest her, she's in the car late at night with somebody they don't know, they don't know what to make of him, and in that situation if one can infer from the evidence that they have a shared purpose, and I'm going to ask you about Fager in a moment, so please explain to me why that doesn't work, well, I mean, that they have a shared purpose, then why couldn't that shared purpose be protecting the dope? There is no reasonable belief that there is any drugs in the vehicle at this time. I think what's important here is that this is a non-investigatory detention of Mr. Tyler. We're talking about a meaningful shift in the scenario, so many of the things that you're on are just listed and that the government talks about in their answer brief. Maybe at the outset, that's a reason to be a little worried on the scene, but then you have the main problem, Ms. Gonzalez, being secured and being removed from the vehicle and being pulled away from Mr. Tyler, and that is a significant shift in the status quo of this- What about officer safety? If they let him get back in the car without checking to see if there are guns in it? Sure, and most of the time, officers are letting somebody get back into their car without checking whether there are guns in it, unless they can meet some objective standard for thinking that there are guns in it, and to loop your Honor's question in with Judge Holmes' question about Fager, again, there's not a single case that I'm aware of, and I'll talk about Maddox separately, where the common enterprise doctrine has been enough to do a serious intrusion on someone's liberty interest, let alone be the sole continuing basis for the detention itself. That sounds, in suspicion by association, which is what the government argues explicitly, it sounds in guilt by association, things that are not allowed by the Supreme Court and principles in cases like Ibarra and DeRay. This court always requires something individualized to the person, so in Denison, it was, in addition to the stuff about Mr. Allen, the fact that he himself is suspected of criminal activity. In Fager, you have the fact that there is a consent search going on of Mr. Fager's vehicle, which this court has put significant weight on, when you're thinking, oh, someone is definitely remaining at the scene, and maybe we find something in their vehicle, and they're going to be wanting to protect themselves. Here, we're talking about someone who's just leaving the scene, so I think that that is a meaningful difference, we don't have the individualized component here, we just have the standalone common enterprise doctrine, and that is right for abuse. I'll reserve my 23 seconds, if that's all right. Yes. May it please the court, Tanner Herman, on behalf of the United States. This case begins with a concession that the initial detention was made in the interest of promoting officer safety, and was reasonable. The narrow issue presented to the district court below was whether, after Ms. Gonzalez's handcuffing, the mission of that detention had been accomplished, and therefore there was no longer a justification for the continuation of that detention. The secondary question of whether, even if the detention was justified beyond that point, it became unreasonable, was not particularly litigated below, because of the narrow framing of the issue. And so I raise this to address the arguments made on the other side, that we have conceded any aspect of individualized danger, or any aspect of reasonable suspicion. Certainly below, we did not claim that there was reasonable suspicion to detain Mr. Tyler to investigate him for criminality, but that does not foreclose us from raising individual suspicion that Mr. Tyler particularly might have posed a danger to the officers. And so here what we have, as the court has identified, is circumstances of a stop that are in a high crime area, known to be associated with drug trafficking, prostitution, shooting, and assaults. A subperson subject to an arrest warrant, whose criminal history we know to be firearms possession, drug trafficking, prostitution, and who is subject to an arrest warrant for drug trafficking. Officers witness her getting picked up in Mr. Tyler's vehicle from the very motel that she is alleged to have conducted drug trafficking out of, traveled across the street, and then after they correctly identify her, they conduct what they term a felony stop. And we have testimony in the record stating that in these felony stops, there is an utmost concern for officer safety, because other occupants of the vehicle may have a vested interest in preventing the stop, and may use concealed weapons in the vehicle to do so. Go ahead. No, go ahead. Please. Assuming, arguing that we accept every single syllable of what you just said, how does any of that bear on the issue in Denison that we're called upon to determine whether there's reasonable suspicion of threat to officer safety if Tyler were to return to the car? Whether it was a high crime area, what does that have to do with whether or not there are guns in this particular car? The issue is not whether or not Mr. Tyler was engaged in criminality, it's what was in that vehicle, correct? Correct. Whether they traveled across the street or not, what does that have to do with whether there's reasonable suspicion of there guns being in this car? My question to you is, under the legal question framed in Denison, what is there at that time, known to the officers, to have created reasonable suspicion to believe that there were guns in that car? There's a couple things. The fact that the car just departed a motel, which the officers knew to be associated with drug trafficking. There is an inexorable link between drug trafficking and firearms recognized in case law, and there's the fact that they are going to pull out of this car Ms. Gonzalez, whose prior criminal history contains incidents of drug trafficking and firearms possession. So under the reasonable suspicion standard, which is a low standard, it is less than probable cause, which is less than a preponderance of the evidence. I think even if it is more likely than not that there is a gun in the car, that does not foreclose the officers from suspecting there might be, and preventing themselves from being subjected to the potential danger that might arise of releasing someone to that vehicle when they don't know what is in there. What about our decision, Melendez-Garcia, where we made clear that there is not an inexorable link between drugs and guns and violence? And it seems to me that part of the problem that I'm struggling with is even if you look and suggest that there was a common purpose between Mr. Tyler and Ms. Gonzalez, that common purpose needs to be animated, it seems to me, by danger. And Melendez-Garcia talks about the notion of there having to be some particularized basis to believe that Mr. Tyler would have been engaged in something that would have been the source of violence or danger to the officers, and help me, because I don't really readily see it. So the distinction here between this and Melendez-Garcia is that in Melendez-Garcia, the officers did not have an arrest warrant. They were operating off a confidential source tip that at most gave them reasonable suspicion to engage with that vehicle. I'm not talking about the facts of Melendez. I'm talking about the overarching analytical lens through which Melendez looked at this, Garcia, and it talked about the notion that it's not enough to say the word drugs and that equal violence and guns. You have to make some sort of correlation between what would be not an unreasonable premise, but a premise and that defendant, or that person, as it were, in the situation at play. And despite my talking about the notion that our case law is filled with the cases that make firearms tools of the trade, nevertheless, Melendez-Garcia suggests there needs to be more in this context as it relates to the individual person. Yes. And I would agree with that. And what do you got? The fact there, here, that distinguishes this is the fact that there was an arrest warrant which was not present in Melendez-Garcia. An arrest warrant for drugs, and was there some suggestion in that arrest warrant that there was violence associated with those drugs? Well, the suggestion comes from the testimony of Officer Burris and the case law recognizing that when we have an arrest warrant, when we're engaging in this, it's distinguishable from an investigative stop. An investigative stop does not necessarily end with somebody being hauled off to jail, whereas when you are engaging in executing an arrest warrant, it does. And so there are heightened officer concerns in that safety. There are reasons that other people on the scene might seek to interfere. It's distinguishable from when there's an investigatory stop because all we're doing in that case is determining whether or not there is further cause. Here we know there is further cause, and that supplies justification for the target or those associated with the target to interfere with the arrest. To interfere through violence, there would have to be some linkage to suggest that the common enterprise that they were involved in would be one that would prompt Mr. Tyler to engage in some act of violence. Because when you talk about an arrest warrant, well, all of the aspects of the arrest warrant had been satisfied, except for the fact they had this logistical issue of getting her pat down so they could take her away. I mean, she was arrested, she was moved away from him. All that stuff is done. And so to the extent that there was any danger in that moment, I've heard the defendant essentially accept, okay, fine, you did what you did in that moment, it's over. We're talking about continuing to detain and deprive him of his liberty. What's the basis for that? Your Honor, I'd point to the Supreme Court's discussion of when we were dealing with potential danger to the officers. In Pennsylvania v. Mims, for example, they said it would certainly be unreasonable to require officers to take unnecessary risks in the performance of their duties. And then in Maddox, reiterated in Thompson, this Court has stated, law enforcement agents faced with the possibility of danger has the right to take a reasonable step to protect themselves. So what we're saying here is that the question is whether the possibility of danger was reasonable. And I think that imposing this requirement that it needs to be almost certain that somebody might engage. I don't think anybody is even talking about almost certain. What we're talking about is articulable facts from which one could derive the position that there was a reasonable inference that this person could be violent. That's what we're talking about. Or this person could be a threat to the officers. And so that's what I'm asking you to help me with. Well, Your Honor, as I've repeated, as I've said before, the facts here come from the fact that they are executing the arrest warrant, which is inherently a dangerous situation, and the underlying nature of the case, which, analyzed under the reasonable suspicion standard, we think is enough to overcome that minimal objective basis necessary for finding reasonable suspicion that these officers may have been subject to danger in this case. What's your best case? Our best cases on that aspect are Dennison and Fager. And both of those cases, this Court implied the association merely based off the fact that two people were traveling in a vehicle. Now that's not an automatic association. Certainly particular facts could weigh against that. For example, if Mr. Tyler had been a rideshare driver, if they'd learned other facts, then maybe that association is not automatic in every case, but it's certainly a strong factor to consider when you're trying to decide if there is association. And then also in those cases, this Court recognized the inherent danger and the inherent possibility that when you are going to execute a detention of this nature, that other individuals present at the scene could seek to interfere with the stop. And again, it's all about the possibility, the potential, and whether that possibility and potential was reasonable under the reasonable suspicion standard. And then briefly, if I may speak upon just Maddox, we believe that, you know, to the extent that the defendant has conceded his detention was reasonable at the outset. We don't need to discuss the limits of the protective detention doctrine. However, I'd point to the similarities between this case and Maddox. Maddox, they were also executing a warrant on a felony drug trafficking warrant. They went to a mobile home. It was a team of all-male officers. They were in unmarked vehicles. They entered the home, detained their suspect. While that suspect was detained, more individuals arrived. Another individual in that cadre was detained under protective detention. Along with seven other people. Along with seven other people. But what's critical here, and the clear analogy between these two cases, is that in that case, the 30-minute detention of Mr. Maddox was due to the fact that the all-male team of officers, due to policy, could not depart the scene without frisking their female suspect, and that had to be done by a female officer. And also that they couldn't depart the scene with their arrest target in unmarked vehicles. Here we also have an all-male team who cannot frisk their suspect and arrive at the scene in unmarked vehicles. Was it Mr. Maddox acting erratically? I mean, wasn't there a basis to believe there's this guy, there's a problem with him? In contrast to this case, in which Mr. Tyler, at least based on the evidence I'm aware of, was compliant and did what he was told to do, I mean, that's a distinction with a difference, is it not? Somewhat. Mr. Maddox was acting erratically, sort of independent of the arrest. Here the facts are not independent of the arrest. These were all undertaken to affect the arrest of Ms. Gonzalez, and that's what the proximity analysis and the common association analysis supplies for us here. Yes, but wouldn't the fact that he was acting erratically mean that independently, particularized to him, there would be concern that he might be a danger to them, whereas there is nothing to be derived from the conduct of Mr. Tyler that would lead you to believe that, right? In this case, there's nothing to be derived from Mr. Tyler's personal specific conduct. Everything that is derived about reasonable suspicion is from his association with Ms. Gonzalez, the nature of the scene, the nature of the stop. Okay. If there are no further questions, we'd ask that you refer to the judgment of the district court.  Possibility and potential are only enough when it's a de minimis intrusion. MIMS is totally an opposite. The government's distinction with Melendez-Garcia also does not make sense there. They were still detaining individuals currently suspected of drug trafficking, whereas there is nothing individualized at all to Mr. Tyler in this stop. And the government has not adequately explained why the shift when Ms. Gonzalez was secured and handcuffed wasn't meaningful in this case. And I see that I'm out of time. So unless the court has questions, we would. Chief, can I ask you one question? Sure. I think you mentioned in your last stint at the podium that you were going to talk about Maddox briefly, since you're out of time. But I do have one hypothetical question about Maddox. In Maddox, would it have been permissible for any of those eight individuals on the curb, other than Mr. Maddox, maybe the seven other fellows that had come up to the house, did they have a right to go into the house while the woman was being arrested? It's not addressed in Maddox because only his detention was raised. But the court is clear that what was required was reasonable belief that the specific individual, Mr. Maddox, that there were specific and articulable facts that he posed a danger to the officers. And I think the court pointed out that there were, in addition to the scenario circumstances, specific things about Mr. Maddox, including a furtive movement right when he arrives, acting erratically at the scene, urinating at one point. And the testimony is that he was considered, I'm going to paraphrase, a highly deadly threat or a critical and deadly threat. So that, I think, is a very different scenario than what we have here, where I don't understand the government to have ever suggested that there's something individualized about Mr. Tyler, and I believe that they have conceded that. Thank you, Your Honors. Thank you, Counsel. The case is submitted. Thank you for your fine argument.